ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| NikSoft Systems Corp. | ) | ASBCA No. 63423-ADR |
| | ) | |
| Under Contract No. FA8771-17-F-0017 | ) | |

APPEARANCES FOR THE APPELLANT: Kristen L. Loesch, Esq.
Josh S. Cergas, Esq.
 Praemia Law, PLLC
 Reston, VA

APPEARANCE FOR THE GOVERNMENT: Caryl A. Potter III, Esq.
 Air Force Deputy Chief Trial Attorney

SUMMARY BINDING DECISION BY ADMINISTRATIVE JUDGE SMITH

The parties requested that entitlement in this appeal be decided by Alternative Dispute Resolution (ADR) using a one-judge summary proceeding with a binding decision. We approved the request along with the May 20, 2024, ADR agreement. Per that agreement this "decision [is] final, conclusive, not subject to reconsideration or appeal, and may not be set aside, except for fraud." Similarly, this decision has no value as precedent and cannot be cited in any other proceeding. We have reviewed the entire record and the two ADR briefs from each party. We find no entitlement and deny the appeal.

SUMMARY OF FACTUAL FINDINGS

Appellant (NikSoft) was awarded a contract for "life cycle sustainment" (the sustainment work) of respondent United States Air Force's (USAF's) Cargo Movement Operations System (CMOS), which is an IT system that, as its name indicates, helps coordinate USAF's movement of cargo. After NikSoft had earned over $8.3 million of the contract's $9.4 million total value, USAF changed its future plans with a command directive to migrate CMOS to a cloud-based IT environment (the migration work). Once given the task to migrate CMOS, there was considerable discussion within USAF and between USAF and NikSoft regarding how the migration work would be accomplished.

NikSoft asserted that the migration work was outside the scope of its sustainment contract and offered to negotiate an added-cost change order to perform the work. USAF considered whether the migration work was within the scope (and cost) of the sustainment contract but ultimately agreed that the migration work was

outside NikSoft's scope. After more consideration, USAF determined that it could not have NikSoft perform the migration work either within the bounds of the sustainment contract or as a change order. Without either of those options, USAF terminated of NikSoft's contract for convenience and the migration work was performed by a different contractor, Ignite. NikSoft's termination settlement was bilaterally resolved for an additional payment of $46,188.58 and is not disputed in this appeal. The termination settlement reserved NikSoft's right to pursue this claim for lost profit of $629,576.16.

NikSoft claims bad faith by USAF when it "acted to harm NikSoft through various means and ultimately forced an early end to the Contract on pretextual grounds." NikSoft asserts that a patchwork of USAF personnel independently, or in cahoots, terminated Niksoft's sustainment contract in order to award the migration work to Ignite. NikSoft alleges that USAF illicitly removed the migration work from the Small Business Administration's (SBA) 8(a) program. Niksoft also argues that USAF's "satisfactory" CPARS rating of NikSoft, which NikSoft characterizes as "negative", was also bad faith.

According to NikSoft, these bad acts were perpetrated for various reasons, some explained in conclusory fashion by NikSoft and some not explained at all. Most prominently, NikSoft argues that USAF decided (for a reason that NikSoft does not explain despite its many allegations regarding purported motivations of USAF personnel or groups) to terminate NikSoft's contract as "punishment" and "retaliation" against NikSoft for its position that the migration work was outside the scope of the sustainment contract – a position that USAF eventually agreed with. Another alleged reason for terminating NikSoft was to steer the migration work to the contracting specialist's (COR's) "close friend's company, Ignite." To support its numerous allegations of bad faith, NikSoft relies a lot upon two affidavits from its own personnel. NikSoft also cites some internal USAF documents where USAF personnel debated and then decided on its final courses of action, including when and how to do the migration work, whether NikSoft's contract could or should be used, the resulting termination for convenience, and the CPARS ratings.

As an example, to support NikSoft's contention about the COR's "very close personal friend" at Ignite, NikSoft cites only to a paragraph in its own affidavit where conclusory and trivial "facts" are depicted. These include that the COR and an Ignite employee were overly familiar and "referred to themselves using familial terms such as "family," "brother," "sister" and "father" and "daughter,"" and that they had "social lunches."

SUMMARY OF CONCLUSIONS OF LAW

NikSoft correctly states that "the [US]AF is required to act in good faith and deal fairly with any contractor. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014); *see* FAR 1.602-2 ('Contracting officers shall . . . [e]nsure that contractors receive impartial, fair, and equitable treatment.')." But NikSoft does not even mention, much less argue how it meets, the high burden of clear and convincing evidence (or so-called "irrefragable proof") for a claim of bad faith against the government.[1]

USAF's briefs do not address NikSoft's many factual contentions and conclusory statements point-by-point, but simply argues globally that "NikSoft has failed to provide the required 'clear and convincing' evidence that the termination for convenience . . . was a bad-faith action by the government with specific intent to harm NikSoft." USAF cites *Exceed Resources, Inc.*, which reiterated long standing precedent on the standard of proof and noted that "a bad faith termination for convenience [is] 'almost impossible to prove.'" ASBCA No. 61652, 20-1 BCA ¶ 37,634 at 182,720 (quoting 33 Nash & Cibinic Rep. NL ¶ 32, *Contract Disputes Act Claims: Minimal Requirements*, (June 2019)). We agree that the precedent regarding clear and convincing evidence, which is a particularly high burden, applies here. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002); *Nexagen Networks, Inc.,* ASBCA No. 60641, 19-1 BCA ¶ 37,258 at 181,328 (citing *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,222; *William Green Constr. Co. v. United States*, 477 F.2d 930, 936 (Ct. Cl. 1973)).

DECISION

Our review of the documents relied upon by NikSoft, and of the entire record whether cited or not, shows that all of USAF's actions originated with the command directive to migrate CMOS, a decision which NikSoft does not allege was targeted at NikSoft or made in bad faith. After the migration decision, USAF's contracting section was delegated the task of accomplishing it on a tight time schedule and that is where NikSoft focuses its claim. But the record consists largely of routine and unremarkable emails, meeting notes, data, and presentation slides — all aimed at the required migration of CMOS. In sum, the record shows a fairly typical institutional command and contract decision and implementation process. NikSoft's termination for convenience was a rational consequence of the overall migration decision.

To be sure, some of the record documents show a degree of confusion and iterative decision-making, including disagreements as to what was contractually

---

[1] The omission of the clear and convince evidence requirement is glaring, especially because it does not appear in the "standard of proof" section of NikSoft's brief.

permissible or wise regarding NikSoft's contract and the migration work. But there is no smoking gun or even any credible evidence of illicit motivation, ill will, or an intent to harm NikSoft, and the sum of USAF's communications and actions do not show bad faith by any individual or by USAF as a group. This is so especially if we focus on the three major decisions that affected NikSoft: The command decision to migrate CMOS, the legal/contract decision that the migration work could not or should not be merged into NikSoft's sustainment contract, and that, because sustainment work was no longer required after migration, that NikSoft's contract should be terminated for convenience. In sum, NikSoft's termination for convenience was the result of fundamentally changed mission circumstances. USAF's adaptation included relatively straightforward questions and decisions (albeit made in a somewhat serpentine way) about how to address the new circumstances contractually.

NikSoft's allegations regarding the "close relationship," and intent to steer work to Ignite, is entirely unsupported. Even if the COR and an Ignite employee had a personal relationship, it is difficult to imagine, as NikSoft asks us to, that a COR, whose role is to implement contract decisions, not make them, could orchestrate such a far-reaching conspiracy. It is even more farfetched that a COR could induce others to "retaliate" against NikSoft for a (temporary) disagreement between USAF and NikSoft about the scope of NikSoft's contract -- all to benefit the COR's friend. Most important, however, here is simply no credible evidence that corroborates NikSoft's affidavit or shows that the COR actually did what NikSoft alleges.

Further, although the migration work was incorporated into Ignite's contract -- where USAF decided it was better integrated, NikSoft was not "removed" from the 8(a) program by USAF or anyone else.[2] And the migration work was never in NikSoft's 8(a) contract, so USAF's migration decision did not take any work away from NikSoft and does not appear relevant to the 8(a) program anyway.

Last, USAF's 2021 CPARs ratings are, by definition, mostly subjective internal government assessments that are visible only in CPARS, which is a restricted-access database where rating reports exist for only three years. CPARS reports permit counter-opinions that appear on the face of each report, where NikSoft could and did depict its side of the story. More to the point, however, according to explicit CPARS guidance, a "satisfactory" rating is, as its plain wording says, not "negative" anyway. So it is difficult to see how bad faith would be proven by a "satisfactory" rating.

In sum, the record evidence does not come close to NikSoft's hype. Virtually all of NikSoft's portrayals of bad faith are based upon its own creative conclusions and its own lengthy and speculative narrations of unremarkable USAF communications. The contrast between NikSoft's voluminous allegations of bad faith, and its citations

---

[2] Participation in the 8(a) program is an SBA matter that USAF does not control.

to *any* record evidence, is stark.[3]  There may well have been some flaws and inconsistencies in USAF's internal contracting communications, decision-making, and ultimate choices regarding NikSoft's contract.  And USAF's contract processes could probably have been more efficient.  But we find no bad faith and certainly no irrefragable proof of it.

NikSoft has not demonstrated entitlement and the appeal is denied.

Dated:  October 2, 2024

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63423-ADR, Appeal of NikSoft Systems Corp, rendered in conformance with the Board's Charter.

Dated:  October 3, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

---

[3] In a footnote, NikSoft contends that USAF ". . . acted to harm NikSoft through various means and ultimately forced an end to [a] *Previous Contract* on pretextual grounds" (italics added).  This sweeping (and familiar) allegation is again supported only by a citation to NikSoft's own claim letter where it made that same allegation verbatim, followed by two pages of equally unsupported assertions of bad faith on the previous contract.